**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| EASYCARE, INC., <br><br> Plaintiff, <br><br> vs. <br><br> LANDER INDUSTRIES, INC., <br><br> Defendant, | No. 4:08-CV-00665-TUC-CKJ (DTF) <br><br><br> **ORDER** |
| LANDER INDUSTRIES, INC., <br><br> Counterclaimant, <br><br> vs. <br><br> EASYCARE, INC., <br><br> Counterdefendant | |

On December 1, 2010, Magistrate Judge D. Thomas Ferraro issued a Report and Recommendation [Doc. 80] construing certain claim terms pursuant to a *Markman* hearing.[1]

On December 15, 2010, Defendant/Counterclaimant Lander Industries filed its Objection to the Magistrate's Report and Recommendation [Doc. 81]. On December 27, 2010 Plaintiff/Counterdefendant filed its Response to Defendant's Objections to Judge's December 1, 2010 Report and Recommendation [Doc. 85]. On January 19, 2011, Plaintiff

---

[1]*Markman v. Westview Instruments, Inc.* 52 F.3d 967 (Fed. Cir. 1995).

filed its Motion for Leave to Exceed Page Limits [Doc. 86] regarding its previously filed Response. On January 24, 2011, Defendant filed its Cross Motion for Leave to File Reply Brief to EasyCare's Extended Response to Defendant's Objections to Magistrate Judge's Report and Recommendation [Doc. 87]. On December 27, 2010, the Court issued its Order [Doc. 84] granting Defendant's Motion for Leave to File Excess Pages [Doc. 83]. As such, the Court will grant Plaintiff's Motion for Leave to Exceed Page Limits [Doc. 86], and deny Defendant's Cross Motion for Leave to File Reply Brief to EasyCare's Extended Response to Defendant's Objections to Magistrate Judge's Report and Recommendation [Doc. 87].

In its discretion, the Court finds this case suitable for decision without oral argument. *See* LRCiv. 7.2(f). The Parties have adequately presented the facts and legal arguments in their briefs and supporting documents, and the decisional process would not be significantly aided by oral argument.

**I.  STANDARD OF REVIEW**

The Court reviews de novo the objected-to portions of the Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The Court reviews for clear error the unobjected-to portions of the Report and Recommendation. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *See also, Conley v. Crabtree*, 14 F.Supp.2d 1203, 1204 (D. Or. 1998).

**II.  ANALYSIS**

Defendant objects broadly to the legal standard used by the magistrate judge, as well as more specifically to the claim construction. The Court shall address each of these in turn, and in doing so has reviewed all of the pleadings, exhibits and transcript, including a careful review of the prosecution history for Plaintiff's Patent No. 7,461,497 B2 ("'497 Patent").

*A.  Legal Standard*

As an initial matter, Defendant complains that the Report and Recommendation ("R & R") [Doc. 80] "incorrectly state[s] that 'there are *only* two situations when a court should

ascribe claim terms a meaning other than the ordinary and customary one: if (1) the patentee acts as his own lexicographer and explicitly defines a claim term; or (2) if the claim term is so unclear that its scope cannot be ascertained from the language used.'" Def.'s Obj. to R & R [Doc. 83] at 3 (emphasis added). Defendant inaccurately quoted the R & R. A careful review of the quoted section of the R & R reveals that the word "only" is absent from the magistrate judge's actual statement. The magistrate judge first stated the general rule, "[t]he terms of a claim are to be given their 'ordinary and customary meaning,' which is 'the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention.'" R & R at 3 (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005). The magistrate judge went on to recognize the exceptions to the general rule, to which Defendant now objects. The Federal Circuit Court of Appeals, upon which the magistrate judge relied, stated:

> Our case law demonstrates two situations where a sufficient reason exists to require the entry of a definition of a claim term other than its ordinary and accustomed meaning. The first arises if the patentee has chosen to be his or her own lexicographer by clearly setting forth an explicit definition for a claim term. The second is where the term or terms chosen by the patentee so deprive the claim of clarity that there is no means by which the scope of the claim may be ascertained from the language used.

*Johnson Worldwide Assoc., Inc. v. Zebco Corp.*, 175 F.3d 985, 990 (Fed. Cir. 1999) (internal citations omitted). It is clear that the magistrate judge stated the exceptions correctly, and Defendant's argument to the contrary is without merit.

Defendant further avers that the R & R failed to "consider or set forth the legal standards required under *Phillips* regarding the prosecution history, especially the prosecution history limitations." Def.'s Obj. to R & R at 3. The Court finds this claim also without merit.

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). The Patent Act requires that the "specification describe the invention as set forth in the claims" and that one must "look to

the language of the claims to determine what 'the applicant regards as his invention.'" *Phillips*, 415 F.3d at 1312 (quoting 35 U.S.C. § 112). First, as recognized by the magistrate judge, claim terms are to be given their "ordinary and customary" meaning, which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1312-13 (citations omitted); R & R at 3. The *Phillips* court goes on to instruct that "[t]he claims, of course, do not stand alone. Rather, they are part of 'a fully integrated written instrument,' consisting principally of a specification that concludes with the claims." *Id.* at 1315 (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978 (Fed. Cir. 1995), *aff'd* 517 U.S. 370, 116 S.Ct. 1384 (1996)). As such, "claims 'must be read in view of the specification, of which they are a part.'" *Id.* (quoting *Markman*, 52 F.3d at 979).

"In addition to consulting the specification, [the Federal Circuit Court of Appeals has] held that a court 'should also consider the patent's prosecution history, if it is in evidence.'" *Phillips*, 415 F.3d at 1317 (quoting *Markman*, 52 F.3d at 980). The *Phillips* court further instructs:

> The prosecution history, which we have designated as part of the "intrinsic evidence," consists of the complete record of the proceedings before the [Patent and Trademark Office ("PTO")] and includes the prior art cited during the examination of the patent. Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent. Furthermore, like the specification, the prosecution history was created by the patentee in attempting to explain and obtain the patent. Yet because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes. Nonetheless, the prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower that it would otherwise be.

*Phillips*, 415 F.3d at 1317 (internal citations omitted). Thus, "intrinsic evidence" consisting of the claim(s), the specification and the prosecution history are of primary importance in claim construction. *See id.*

The Federal Circuit has "also authorized district courts to rely on extrinsic evidence, which 'consists of all evidence external to the patent and the prosecution history, including

expert and inventor testimony, dictionaries, and learned treatises.'" *Phillips*, 415 F.3d at 1317 (quoting *Markman*, 52 F.3d at 980 (citations omitted)) (citations omitted). "[W]hile extrinsic evidence 'can shed useful light on the relevant art,' we have explained that it is 'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Id.* (quoting *C.R. Bard, Inc. v. U.S. Surgical Corp*, 388 F.3d 858, 862 (Fed. Cir. 2004) (citations omitted)). Still, "dictionaries and treatises can be useful in claim construction." *Id.* (citations omitted). Furthermore, expert testimony can also be useful to a court; "[h]owever, conclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court." *Id.* 415 F.3d at 1318 (citations omitted). Ultimately, the district court is directed to use its sound discretion and weigh the evidence "keep[ing] in mind the flaws inherent in each type of evidence and assess that evidence accordingly." *Id.* at 1319. The Court finds that Magistrate Judge Ferraro applied the correct legal standard.

*B.   Objections to Claim Construction*

Defendant's objections arise primarily from Claim 10 of the '497 Patent. Claim 10 of the '497 Patent states, as follows:

> A horse boot comprising:
>
> a shell that includes a sole, an upper, and a tongue, said shell being limited in size to extend everywhere below a hairline of a hoof of a horse wearing the horse boot;
>
> a gaiter attached to the upper of the shell, said gaiter including a connecting section enclosing a heel portion of the upper around a back portion of said hoof, and including an open wrapping section with flaps for releasably wrapping around the enclosing a pastern of the horse above the hairline and below a fetlock of the horse, said hairline remaining uncovered by said open wrapping section around a front portion of the hoof; and
>
> a restraining mechanism for strapping the shell of the boot on the hoof of the horse wherein said hairline is in a gap between a front lower edge of said gaiter and an upper edge of said tongue.

Joint Claim Constr. and Pre-Hearing Statement [Doc. 44], Exh. "A" at 14.

<u>1. Upper</u>

Defendant objects to the magistrate judge's construction of the term "upper." Def.'s Obj. to R & R at 3. Magistrate Judge Ferraro construed the term "upper" as "a portion of the

shell that extends upward from the sole." R & R at 9. This is also the definition propounded by Plaintiff. Pl.'s Opening Claim Construction Brief [Doc. 56] at 8. Defendant asserts that the magistrate judge's construction is ambiguous and impermissibly expands the limitations in the prosecution history. Def.'s Obj. to R & R at 5. Defendant argues that at a minimum, the term "upper" must account for a definition which includes "the vamp and quarters." *Id.* at 5-6. Defendant originally requested the term "upper" to be construed as "an element of the shell that is a peripheral wall which extends upward along the back or back portion, and two sides of the sole and may not rise above the hairline of the hoof of a horse." Def.'s *Markman* Resp. Brief on the '497 Patent [Doc. 70] at 8.

As an initial matter, it is express within the claim that the "shell" is "limited in size to extend everywhere below a hairline of a hoof of a horse wearing the horse boot." Joint Claim Constr. and Pre-Hearing Statement [Doc. 44], Exh. "A" at 14. As such, adding this limitation to the term "upper" is unnecessary and superfluous. Removing this portion from Defendant's preferred construction would leave "upper" defined as "an element of the shell that is a peripheral wall which extends upward along the back or back portion, and two sides of the sole."

In support of its construction, Defendant relies first on the background section of the '497 Patent. This portion, entitled "Description of the Prior Art" states that "[a] typical horse boot consists of a sole and an upper integral with or secured to the sole. The upper wraps around the back and the side portions of the boot and, in most cases, it defines an opening for a tongue at the front of the boot." '497 Patent at 1:27-39. Further, the "Description of the Prior Art" states, "[s]o long as an opening forms during use between the upper of the boot and the hoof, sand and other material will continue to penetrate and irritate the horse." *Id.* at 2:8-11. Additionally, Defendant relies on the PTO rejection of Patent Application No. 11/281,359 and a German patent in support of its contention that the prior art dictates a

1 narrower construction of the term "upper."[2] The description of the prior art is helpful "to show what was then old, to distinguish what [is] new, and to aid the court in the construction of the patent." *Brown v. Piper*, 91 U.S. 37, 41, 1 Otto 37 (1875) (discussing admissibility of evidence of the state of the art). It should not, however, vary the limitations in the claims.

Next, Defendant asserts that the language of the '497 Patent Specification mandates a restricted definition of the term upper. Relying on the "Description of the Preferred Embodiments," Defendant urges "the upper **16** consists of a peripheral wall which runs along the edge of the sole **14** on the back and the sides of the shell **12** and is secured to the sole in a conventional manner." '497 Patent at 4:41-44 (emphasis in original). The next line provides, "[t]he upper **16** which is preferably also molded and integral with the sole defines an opening for receiving the hoof H." *Id.* at 4:44-47. "[T]he law does not require the court, where an applicant describes only a single embodiment to construe the claims as limited to that one embodiment." *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1122 (Fed. Cir. 2004). Although the description of the "upper" relied on by Defendant is one embodiment, it should not be read to be the only possibility. Toward this end, the broad description of the "upper" as "defin[ing] the opening for receiving the hoof" is instructive.

Finally, Defendant asserts that the magistrate judge deleted a portion of the dictionary definition of "upper" he purportedly relied upon thereby expanding the scope of the term. According to Defendant, the definition of "upper" must at a minimum be "the upper portion of a shoe or boot, above the sole, comprising the vamp and quarters." Defendant then invites the Court to analyze the meanings of the terms vamp and quarters. Plaintiff acknowledged

---

[2]Local Rule 7.1(b), Rules of Practice of the United States District Court for the District of Arizona, provides that "[a]ll pleadings and other papers shall be written in the English language." LRCiv. 7.1(b)(1). Defendant's submission of a German language document in support of its arguments is not helpful to the Court. Although the hearing transcript references Exhibits 10 and 11 as being the German patent with an English translation, this is not consistent with the Exhibits available to the Court. Moreover, the Court's reading of the German patent is that it describes a cap with a front and running on both sides; however, this is distinguished from the heel part, which in some figures is absent.

- 7 -

during oral argument that this was the definition of "upper" provided to the PTO during the application process; however, it is Plaintiff's position that vamp and quarters is subsumed in its preferred construction, "a portion of the shell that extends upward from the sole." Hr'g Tr. 11/9/10 [Doc. 97] at 23:21-28:18; *See also* Joint Claim Constr. and Pre-Hearing Statement [Doc. 44], Exh. "11," Pl.'s Resp. to Final Office Action 12/3/2007 at 4.[3] Plaintiff further defined "vamp" as "the part between the sole and the top of the shoe or boot and in front of a line drawn downward from the ankle-bone." Joint Claim Constr. and Pre-Hearing Statement [Doc. 44], Exh. "11," Pl.'s Resp. to Final Office Action 12/3/2007 at 4. "The quarters are parts above the sole from the middle of the back to the vamp." *Id.* These definitions were provided to the PTO in response to the Examiner's position regarding elements of the Barclay horse boot. This reference to human footwear was an effort to aid the PTO in understanding how Plaintiff's boot differed from the prior art. A reference to human footwear is imperfect, however, in that the anatomy of a horse and a human differ. Although colloquially the fetlock is referred to as the "ankle" of a horse, it is technically a different joint. *See* Joint Claim Constr. and Pre-Hearing Statement [Doc. 46], Exh. "23," *Clinical Equine Anatomy and Common Disorders of the Horse* at 81-82; Gray, H., *Anatomy of the Human Body* (2000). Thus, although the human footwear analogy is helpful, it cannot precisely translate to equine boots. As such, the Court agrees with Plaintiff's contention that the concept of vamp and quarters was necessarily subsumed within the definition of upper relied upon by the PTO, inasmuch as they served to orient the Examiner as to what features in a horse boot constitute an "upper." Furthermore, "[a]n argument made to an examiner constitutes a disclaimer only if it is 'clear and unmistakable.'" *Schindler Elev. Corp. v. Otis Elev. Corp.*, 593 F.3d 1275, 1284 (Fed. Cir. 2010). The Court does not find an unequivocal disavowal as urged by Defendant. *See Omega Eng'g v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003) ("where the patentee has unequivocally disavowed a certain meaning to obtain his patent, the doctrine of prosecution disclaimer attaches and narrows the ordinary

---

[3] Bates No. EC 00441.

1 meaning of the claim congruent with the scope of the surrender."). In addition to the support
2 found in the prosecution history, the magistrate judge's construction is consistent with the
3 '497 Patent Specification which states that "[o]ne aspect of the invention resides in a boot
4 shell with an upper extending upward below the hairline of the hoof of the horse and with
5 a protective gaiter attached to the back portion of the upper." '497 Patent at 2:37-40. The
6 Court will therefore, adopt the magistrate judge's construction of "upper" as "a portion of
7 the shell that extends upward from the sole."

### 2. Tongue

Defendant objects to the magistrate judge's construction of the term "tongue." The magistrate judge adopted the following construction: "a flap located at the front portion of the shell with a free end projecting upward from an opening in the shell." R & R at 10. The magistrate judge adopted Plaintiff's construction as defined in its Response brief. Pl.'s Claim Construction Resp. Brief [Doc. 69] at 9. Defendant asserts that the construction should be: "an element of the shell that is located in the front portion of the shell, is integral with the sole, extends upward from the sole to a free end." Def.'s Obj. to R & R [Doc. 83] at 7. Defendant argues that through his construction, the magistrate judge improperly expanded the limitation of claim scope.

During the prosecution history, Plaintiff made the following statement to the PTO:

> Generally speaking, a tongue is [a] flap with a free end projecting upward from an opening in the upper of the shoe or boot. The tongue facilitates entry of the foot into the shoe or boot and often a gusset is attached on both sides of the tongue in order to maintain continuity in the enclosure provided by the upper in spite of the opening resulting from the presence of a tongue protruding upward from the lower, front portion of the upper.

Joint Claim Constr. and Pre-Hearing Statement [Doc. 44], Exh. "15," Pl.'s Resp. to Office Action and Amendment 5/25/2007 at 10. Plaintiff also provided the Examiner with dictionary definitions of the term "tongue" including Merriam-Webster's definition as "the flap under the lacing or buckles of a shoe at the throat of the vamp" and Encarta's definition, "the middle flap in the opening of a shoe or boot." Joint Claim Constr. and Pre-Hearing Statement [Doc. 44], Exh. "15," Pl.'s Resp. to Office Action and Amendment 5/25/2007 at

10; Joint Claim Constr. and Pre-Hearing Statement [Doc. 44], Exh. "6," Pl.'s Amended Brief on Appeal 5/27/2008 at EC 00081-83. The '497 Patent's "Description of the Preferred Embodiments" provides the following:

> The tongue **18**, located in the front portion of the shell **12**, also extends upward from the sole **14** and is integral with the sole. Separated by the upper **16** by two symmetrical slits **28**, the tongue **18** has a free end **30** that is movable in and out of the shell opening defined by the tongue and the upper, thereby facilitating the process of placing a hoof in the shell and also allowing the tongue **18** and the upper **16** to conform to the hoof. The tongue is preferably manufactured as a molded structure integral with the upper and its extent is defined by the slits that separate the top portion of the tongue from the forward edges of the upper. These edges may be folded backward inside the boot to provide a retaining structure for an alternative restraining mechanism used to secure the boot on the hoof, as described below.

'497 Patent at 4:61-5:7 (emphasis in original).

Defendant argues that the magistrate judge's exclusion of the second sentence of the dictionary definition of "tongue" presented by Plaintiff to the PTO, impermissibly broadened the scope of the claim, as well as introduced ambiguity to the term. The Court disagrees. The omitted portion, "[t]he tongue facilitates entry of the foot into the shoe or boot and often a gusset is attached on both sides of the tongue in order to maintain continuity in the enclosure provided by the upper in spite of the opening resulting from the presence of a tongue protruding upward from the lower, front portion of the upper," provides an explanation of the function of a "tongue" in human footwear. Joint Claim Constr. and Pre-Hearing Statement [Doc. 44], Exh. "15," Pl.'s Resp. to Office Action and Amendment 5/25/2007 at 10. It does not provide elements essential to the construction of the term "tongue." Indeed, in consideration of the preferred embodiments, the '497 Patent provides, "the tongue **18** has a free end **30** that is movable in and out of the shell opening defined by the tongue and the upper, thereby facilitating the process of placing a hoof in the shell and also allowing the tongue **18** and the upper **16** to conform to the hoof." '497 Patent at 4:61-5:7 (emphasis in original).

The '497 Patent provides that the preferred embodiment is one in which the tongue is integral with the sole and the upper. '497 Patent at 4:61-5:7. Merriam-Webster's Dictionary defines "integral" as "essential to completeness" or "formed as a unit with another

1  part." http://www.merriam-webster.com/dictionary/integral (last visited 9/20/11). As such,
2  for a "tongue" to be integral with the sole and the upper, suggests that the "tongue" is an
3  essential element to the horse boot, not that it must be physically adhered as Defendant
4  argues. "A flap located at the front portion of the shell with a free end projecting upward
5  from an opening in the shell" may be integral with the sole either by directly attaching to it
6  or in combination with a portion of the upper. Contrary to Defendant's contention, the
7  magistrate judge's construction of tongue is neither contradictory or incompatible with the
8  prosecution history. Accordingly, the Court adopts the magistrate judge's construction of
9  "tongue" as "a flap located at the front portion of the shell with a free end projecting upward
10 from an opening in the shell."

### 3. Connecting Section

Defendant objects to the magistrate judge's construction of "connecting section." The magistrate judge construed "connecting section" as: "a structure of the gaiter that allows it to be connected to the upper." R & R [Doc. 80] at 14. Defendant asserts that the magistrate judge's construction is impermissibly vague and improperly expands the limitation of claim scope in the intrinsic record. Defendant avers that the proper construction is "a durable transition between a mounting section and an open wrapping section." Def.'s Obj. to R & R at 10. Plaintiff contends that the proper construction is "a structure of the gaiter that allows it to be connected to the upper" as determined by the magistrate judge. Pl.'s Resp. to Def.'s Obj. to R & R [Doc. 85] at 8; *See also*, Pl.'s Opening Claim Constr. Brief [Doc. 56] at 17.

Claim 10 provides "a gaiter attached to the upper of the shell, said gaiter including a *connecting section* enclosing a heel portion of the upper around a back portion of said hoof." '497 Patent at 10:9-12 (emphasis added). The plain language of the claim describes the "connecting section" as a part of the gaiter. The Federal Circuit Court of Appeals has instructed that "different claim terms are presumed to have different meanings." *John v. Bobrick Wash. Equip.*, 527 F.3d 1379, 1392 (Fed. Cir. 2008). Moreover, "[o]ther claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term." *Phillips*, 415 F.3d at 1314 (citations

- 11 -

omitted). Non-asserted claim 1 provides "wherein the gaiter includes a *mounting section* for releasable connection of the gaiter to a heel portion of the upper." '497 Patent at 9:22-3 (emphasis added). As such, Defendant's proposed construction must fail because it incorporates a term of art, "mounting section," not required by the asserted claim. Thus, the term "mounting section" and "connecting section" are presumed to be distinct.

This distinction is further reinforced by the specification, describing the preferred embodiments, which provides that:

> The connecting section **36** is used to provide a durable transition between the rigid mounting section **34** and the stretchable wrapping section **32**. To that end, it is made of a flexible but not stretchable material and it preferably overlaps the back side of the wrapping section, as illustrated in FIG. **4**. The material used should advantageously be stronger and more resistant to wear than the material of the wrapping section **32**. Suitable materials for the connecting section **36** include leather as well as textiles made from natural and or synthetic substances. As a result of this configuration, the stretchability of the lower heel portion of the wrapping section **32** is partly limited by the overlapping material of the connecting section **36**, but it is also greatly reinforced thereby.

'497 Patent 5:60-6:5 (describing preferred embodiments) (emphasis in original). The specification further provides:

> It is noted that the gaiter **22** is much more susceptible to wear and tear than the shell **12** of the invention because of the softer and less resistant materials used to provide comfort and attached to the shell **12** by means of connections that can be easily uncoupled, such as screws, snaps, ball-and-socket, tongue-and-groove, channel-and-rod, a hook-and-loop strip, or the like. Accordingly, the gaiter is made replaceable during the life of the horse boot in order to take advantage of the longer useful life of the plastic shell. As the quality of materials improves and materials with durability comparable to that of the shell **12** are developed that provide the described gaiter functions, it is anticipated that the boot of the invention may be manufactured with a permanently attached gaiter.

'497 Patent 6:35-48 (describing preferred embodiments) (emphasis in original). This latter paragraph contemplates a gaiter which connects permanently to the boot, without a mounting section, thereby supporting Plaintiff's contention that a connecting section is a structure of the gaiter that allows it to be connected to the upper.

Defendant further asserts that the magistrate judge "incorrectly applied limitations found in the prosecution history" and improperly looked to Plaintiff's intent when considering its response to PTO action. Def.'s Obj. to R & R at 12. Defendant argued the

1 limitations of the prosecution history in objecting to the legal standard applied by the
2 magistrate judge, but now requests the Court to unwaveringly rely upon that history in
3 support of its construction. "[B]ecause the prosecution history represents an ongoing
4 negotiation between the PTO and the applicant, rather than the final product of that
5 negotiation, it often lacks the clarity of the specification and thus is less useful for claim
6 construction purposes." *Phillips*, 415 F.3d at 1317 (internal citations omitted). Although,
7 Plaintiff stated that "both claims 1 and 19 require that the gaiter have a 'section for releasable
8 connection of the gaiter to a heel portion of the upper[,]'" the term releasable does not appear
9 in independent claim 10. Joint Claim Constr. and Pre-Hearing Statement [Doc. 44], Exh.
10 "15," Pl.'s Resp. to Office Action and Amendment 5/25/2007 at 12. Non-asserted claim 1
11 states that the "mounting section" provides a "*releasable* connection of the gaiter." '497
12 Patent at 9:22-3. Claim 10 does not require the "connecting section" to be releasable. *Id.* at
13 10:9-12; *See also*, discussion, *supra*. Moreover, dependant claim 18 provides, "[t]he horse
14 boot of claim **10**, wherein said connecting section is releasably connected to the heel portion
15 of the upper." *Id.* at 10:43-5 (emphasis in original). "[T]he presence of a dependent claim
16 that adds a particular limitation gives rise to a presumption that the limitation in question is
17 not present in the independent claim." *Phillips*, 415 F.3d at 1315. As such, the plain
18 language of the claims and the specification of the '497 Patent, with due consideration of the
19 prosecution history, do not demonstrate that the presence of a connecting section necessarily
20 implies the presence of a mounting section. *See Rambus, Inc. v. Infineon Techs, AG*, 318
21 F.3d 1081, 1089-91 (Fed. Cir. 2003) (finding no clear disclaimer because the statement made
22 was "facially inaccurate" in light of the remainder of the prosecution history). The Court
23 adopts the magistrate judge's construction of "connecting section" as "a structure of the
24 gaiter that allows it to be connected to the upper."

### 4. Heel Portion of the Upper

26 Defendant objects to the magistrate judge's construction of the term "heel portion of
27 the upper" as impermissibly vague, failing to consider the prosecution history, and
28 improperly expanding upon the disclaimers of claim scope. Def.'s Obj. to R & R [Doc. 83]

at 14. The magistrate judge construed this term as "the rear 180-degrees of the upper." R & R [Doc. 80] at 17. Defendant asserts that "heel portion of the upper" should be construed as "the back portion of the upper – not the two sides – of the upper." Plaintiff supports the magistrate judge's interpretation.

Claim 10 provides "a gaiter attached to the upper of the shell, said gaiter including a connecting section enclosing a heel portion of the upper around a back portion of said hoof[.]" '497 Patent 10:9-11. Dependent claim 11 provides "said connecting section encloses the heel portion of the upper over at least 180 degrees around the back portion of the hoof[.]" *Id.* at 10:21-3. The limitation contained within claim 11 that at a minimum 180 degrees of the back portion of the hoof suggests that the heel portion may be the rear 180 degrees of the hoof or something less.[4]

Plaintiff, in its initial application explained that "it is recommended that the back side of the gaiter 22 cover at least the entire back of the hoof (that is, at least 180-degree coverage)[.]" Joint Claim Constr. and Pre-Hearing Statement [Doc. 44], Exh. "22," Pl.'s Utility Patent Application 11/17/2005 at 16. This would suggest that the entire back of the hoof encompasses the rear half of the hoof, which would indicate that the heel portion is something less than 180-degrees. At oral argument, Plaintiff contended that "heel portion of the upper . . . has to be construed with respect to the anatomy of a hoof and that the heel includes the sides as well as the back." Hr'g Tr. 11/9/10 at 68:5-8. Anatomically speaking, the heel portion of the hoof encompasses between approximately 120 and 240 degrees of the rear of the hoof. *Id.* at 113:5-117:14; Hr'g 11/9/10 Exh. 21, Stashak, Ted, *Adams' Lameness in Horses* 95 (Lea & Febiger, 4th ed., 1987).

Defendant argues that Plaintiff narrowed its construction of "heel portion of the upper" by designating it as the "rear lip" in its appeal. *See* Joint Claim Constr. and Pre-Hearing Statement [Doc. 44], Exh. "6," Pl.'s Amended Brief on Appeal 8/21/2008 at 3 & Fig. 7. As Plaintiff notes, the PTO expressly states that "[t]he use of reference characters is

---

[4]This presumes that a hoof is roughly circular, and therefore 360-degrees.

to be considered as having no effect on the scope of the claims." Manual of Patent Examining Procedure 608.01(m). Nor does it represent a disavowal of the claim scope. *See Verizon v. Vonage Holdings*, 503 F.3d 1295, 1306 (Fed. Cir. 2007). Further, the '497 Patent specification provides:

> The mounting section **34** of the gaiter is designed to be attached to the rear lip **24** of the upper **16** of the boot. As seen better in the rear and side views of FIGS. **4** and **5**, the shape of the mounting section **34** conforms to the lip **24** and the sides of the upper **16,** so that it can be mounted around them.

'497 Patent 5:42-6. This section distinguishes the lip of the upper from the sides of the upper. It does not, however, define the heel portion.

As an initial matter, the Court finds Defendant's construction more vague than that which was adopted by the magistrate judge. Moreover, it is not supported by how one skilled in the art would interpret a "heel portion" of a hoof. *See Markman*, 52 F.3d at 979. The equine heel encompasses the area between approximately 120 and 240 degrees or the rear third of the hoof. Logically, the heel portion of a horse boot would encompass, at a minimum, this same area. Further, Plaintiff propounded such a definition in oral argument and its briefing. The magistrate judge's construction, however, is broader than this definition. As such, the Court will construe "heel portion of the upper" as "the rear third of the horse boot upper, encompassing the area between approximately 120 and 240 degrees, where zero is the toe apex at the front of the boot."

### 5. Open Wrapping Section with Flaps

Defendant urges that the magistrate judge improperly expanded the claim scope in his construction of the term "open wrapping section with flaps." Def.'s Obj. to R & R [Doc. 83] at 15. Defendant further urges this Court to adopt its construction, "an element of the back portion of the gaiter that is open to the front, with at least two flaps for wrapping around the front of the pastern." *Id.* at 16. The magistrate judge construed this term consistently with that propounded by Plaintiff, as "an element of the gaiter that is open to the front, with at least two flaps for wrapping around the front of the pastern." R & R [Doc. 80] at 20.

Claim 10 provides for:

> a gaiter attached to the upper of the shell, said gaiter including a connecting section enclosing a heel portion of the upper around a back portion of said hoof, and including an open wrapping section with flaps for releasably wrapping around and enclosing a pastern of the horse above the hairline and below a fetlock of the horse, said hairline remaining uncovered by said open wrapping section around a front portion of the hoof.

'497 Patent at 10:9-16. In its initial application, Plaintiff defined the "wrapping section" as including "a central portion designed to cover the back of the hoof of the horse and two flaps 38, 40 extending forward, so that they can be wrapped around the pastern of the horse above the front hairline of the hoof and below the fetlock." Joint Claim Constr. and Pre-Hearing Statement [Doc. 44], Exh. "22," Pl.'s Utility Patent Application 11/17/2005 at 13. Subsequently, in response to the Examiner's objection to claims 1-10, Plaintiff further explained, "[t]he back portion 32 of the gaiter 22 is described in the specification as a wrapping section (see the second line of Paragraph 32), separate and distinct from the flaps 38, 40 that extend forward from the wrapping section. Therefore, the flaps of the invention do not extend to the back of the gaiter." Joint Claim Constr. and Pre-Hearing Statement [Doc. 44], Exh. "15," Pl.'s Resp. to Office Action and Amendment 5/25/2007 at 6. With regard to both claims 1 and 19, Plaintiff defines a gaiter as "a structure that wraps around the pastern." *See* Joint Claim Constr. and Pre-Hearing Statement [Doc. 44], Exh. "15," Pl.'s Resp. to Office Action and Amendment 5/25/2007 at 12. As such, the "open wrapping section" could be something less than the entire gaiter.

Dependent claim 11 provides, "[t]he horse boot of claim **10**, wherein said connecting section encloses the heel portion of the upper over at least 180 degrees around the back portion of the hoof, and said hairline remains uncovered by said open wrapping section over at least 120 degrees around the front portion of the hoof." '497 Patent at 10:21-5 (emphasis in original). Dependent claim 12 provides, "[t]he horse boot of claim **11**, wherein said wrapping section is approximately six inches high around a heel of a hoof and at least one and a half inches high around the front portion of the hoof and the horse wearing the boot." *Id.* at 10:26-9 (emphasis in original). "[T]he presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present

- 16 -

1 | in the independent claim." *Phillips*, 415 F.3d at 1315.  By urging a construction that would
2 | define an "open wrapping section with flaps" as "an element of the back portion of the
3 | gaiter," Defendant improperly limits the term as contemplated by claim 10, which must be
4 | broader than the limitations provided by the dependent claims.  As such, the Court adopts the
5 | magistrate judge's construction of the term "open wrapping section with flaps" as "an
6 | element of the gaiter that is open to the front, with at least two flaps for wrapping around the
7 | front of the pastern."

Accordingly, after an independent review of the pleadings, exhibits and transcript, IT IS HEREBY ORDERED that:

    1)    Plaintiff's Motion for Leave to Exceed Page Limits [Doc. 86] is GRANTED;

    2)    Defendant's Cross Motion for Leave to File Reply Brief to EasyCare's Extended Response to Defendant's Objections to Magistrate Judge's Report and Recommendation [Doc. 87] is DENIED; and

    3)    The Report and Recommendation [Doc. 80] is REJECTED in part.  The Court construes "heel portion of the upper" as "the rear third of the horse boot upper, encompassing the area between approximately 120 and 240 degrees, where zero is the toe apex at the front of the boot."  The remainder of the Report and Recommendation [Doc. 80] is ADOPTED.

DATED this 8th day of November, 2011.

_____
Cindy K. Jorgenson
United States District Judge